UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:16-CR-30-GFVT-HAI-1 |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| BRIAN ELLIS, ) | |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Court, on referral, considers reported supervised release violations by Defendant Brian Ellis. *See* D.E. 36. District Judge Van Tatenhove entered a judgment against Defendant on August 18, 2017, following a plea of guilty to a violation of 21 U.S.C. § 846, conspiracy to distribute a mixture or substance containing methamphetamine. D.E. 34. Defendant was sentenced to ninety-eight months of imprisonment, followed by three years of supervised release. *Id.* at 2–3. Defendant was released from custody to the Northern District of Georgia on August 9, 2022, to reside with his parents and begin service of his six-year term of supervision. However, jurisdiction remains with this Court.

**I.**

On October 11, 2022, the United States Probation Office ("USPO") issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges eight violations, based on information received from Officer Joshua Parker with the Northern District of Georgia on October 7, 2022. According to the Report,

> On August 9, 2022, Defendant produced a urine specimen which tested positive for methamphetamine, via instant testing device. He denied use of

>methamphetamine, so the urine specimen was forwarded to Alere Toxicology Services (Alere) for confirmation testing.
>
>On August 16, 2022, Alere reported that Ellis' urine specimen collected on August 9, 2022, was confirmed to be positive for methamphetamine.

The Report indicates that Defendant also produced urine specimens that tested positive for methamphetamine via instant testing on August 19 and 31. When confronted with the results, Defendant verbally admitted to using methamphetamine on August 17 and 28 and signed admission forms. On September 28, Officer Parker conducted a home visit, and Defendant verbally admitted to the use of methamphetamine on or about September 26 and signed another admission form.

Stemming from this conduct, Violations #1, #3, #5, and #7 allege that Defendant violated the condition that prohibits him from any unlawful use of a controlled substance. These are Grade C violations. Violations #2, #4, #6, and #8 allege that Defendant violated the conditions requiring him not to commit another federal, state, or local crime or unlawfully possess a controlled substance. Citing the Sixth Circuit's decision that use is equivalent to possession, Violations #2, #4, #6, and #8 are Grade B violations because Defendant's methamphetamine possession, on account of his prior drug conviction, constitute Class E felonies under 21 U.S.C. § 844(a).

Following Defendant's arrest, on November 30, 2022, the Northern District of Georgia conducted Rule 40 proceedings. D.E. 39. Defendant was released on an unsecured $5,000 bond and his appearance in this District was subsequently scheduled for December 20, 2022.

On December 15, 2022, the USPO issued a Supervised Violation Report Addendum ("the Addendum"). The Addendum charges two additional violations. According to the Addendum,

>On November 30, 2022, per Northern District of Georgia USPO Joshua Parker, Ellis produced a urine specimen which tested positive for methamphetamine, via instant testing device. When confronted with the test results,

2

> he admitted to using methamphetamine on or about November 25, 2022, and he signed an Admission of Drug Use stating as such.

Based on this conduct, Violation #9 alleges that Defendant once again violated the condition prohibiting him from unlawfully using a controlled substance. This is another Grade C violation. Violation #10 alleges that Defendant violated the conditions requiring him not to commit another federal, state, or local crime or unlawfully possess a controlled substance. Again, citing the Sixth Circuit's decision that use is equivalent to possession, Violation # 10 is another Grade B violation because Defendant's methamphetamine possession, on account of his prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

On December 20, 2022, the USPO issued a Second Supervised Release Violation Report Addendum ("the Second Addendum"). The Second Addendum charges two additional violations. According to the Second Addendum,

> On December 20, 2022, Ellis reported to the U.S. Probation Office, in London, Kentucky. Prior to submitting a urine specimen for drug testing purposes, he admitted to using methamphetamine on or about December 16, 2022. Ellis subsequently produced a urine specimen which tested positive for methamphetamine, via instant testing device, and he signed a Positive Drug Test Admission Report (PROB 4) admitting to the use.

Based on this conduct, Violation #11 alleges that Defendant again violated the condition prohibiting him from unlawfully using a controlled substance. This is also Grade C violation. Violation #12 alleges that Defendant again violated the conditions requiring him not to commit another federal, state, or local crime or unlawfully possess a controlled substance. Based on the same reasoning as the other violations of these conditions, Violation #12 is a Grade B violation.

**II.**

The Court conducted an initial appearance pursuant to Federal Rule of Criminal Procedure 32.1 on December 20, 2022. D.E. 41. During the hearing, Defendant made a knowing, voluntary,

and intelligent waiver of his right to a preliminary hearing. *Id.* At the initial appearance, the United States made an oral motion for interim detention; Defendant argued for release. *Id*. Based on the heavy defense burden under 18 U.S.C. § 3143(a), the Court found detention was required.

At the final hearing on January 9, 2023, Defendant was afforded all rights under Rule 32.1 and 18 U.S.C. § 3583. D.E. 46. Defendant also waived a formal hearing and stipulated to the violations set forth in the Report and its addenda. *Id.* The Court found Defendant to be competent to stipulate to the violations and that the stipulation was knowingly, voluntarily, and intelligently made. *Id.* The Court also found the stipulation to be consistent with the advice of counsel. *Id*.

Of course, the Court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3); *see also United States v. Cofield*, 233 F.3d 405, 406 (6th Cir. 2000) ("In order to revoke supervised release, the sentencing court must find by a preponderance of the evidence that a defendant has violated a condition of his supervised release."). Defendant's stipulation permits the Court to find that he engaged in conduct that is a Grade B violation under the Guidelines. *See* U.S.S.G. § 7B1.1(a)(2).

Prior to the final hearing, Defendant, through counsel, filed two letters from his family members and one from his employer. D.E. 45. A letter from Carter Hope Center Recovery Residence in Dalton Georgia was also filed, indicating that Defendant's application for long-term residential treatment had been accepted and he could be admitted once a bed becomes available. D.E. 45-1 at 5. During the final hearing, the government recommended that Defendant be sentenced to nine months of imprisonment, followed by three years of supervised release. Defense counsel recommended a below-Guidelines sentence of two months of imprisonment followed by a term of supervised release with required drug abuse treatment. The government focused on the breach of the Court's trust, which it noted is particularly egregious. The government highlighted

4

that Defendant immediately violated upon his release and continued to do so by using methamphetamine multiple times. Further, the government noted that two of these uses occurred prior to scheduled court hearings. Because of this, the government argued that treatment is not a viable alternative to revocation. The government also noted that Defendant's methamphetamine use closely tethers the violations to his underlying conviction. The government conceded that Defendant's honesty regarding five of the six instances of methamphetamine use and his stipulation to the violations are mitigating factors.

Defense counsel agreed that revocation is appropriate and stated that Defendant has a serious drug addiction. While the RDAP program initially helped him cope with this addiction, defense counsel explained that drugs were easily accessible at the camp in Atlanta where Defendant served the latter portion of his sentence. Defense counsel also stated that Defendant was able to stay clean during his later stay at a halfway house. However, Defendant once again had easy access to methamphetamine via his old connections when he was released, which led to the current violations.

Defendant addressed the Court directly and acknowledged that he had made several mistakes. Defendant requested help with his drug addiction.

### III.

Under 18 U.S.C. § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant was originally convicted of the Class C felony conspiracy to distribute a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 846. *See* 21 U.S.C. § 841(b)(1)(C); 18 U.S.C § 3559(a)(3). His conviction carries a 24-month maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on Defendant's criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted).

Under § 7B1.1, Defendant's admitted conduct would qualify as Grade C violations with respect to Violations #1, #3, #5, #7, #9, and #11, and Grade B violations with respect to Violations #2, #4, #6, #8, #10, and #12. Given Defendant's criminal history category of I (the category at the time of the conviction in this District) and Grade B violations, Defendant's range, under the Revocation Table of Chapter 7, is four to ten months. U.S.S.G. § 7B1.4(a); *see* U.S.S.G. §7B1.1(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade."). Both parties agreed to this calculation of the range.

A Court may also re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Defendant's original conviction carries no maximum term of supervised release. 21 U.S.C. § 841(b)(1)(C).

Congress does ***mandate*** revocation in a case of this nature. By statute, the Court must revoke Defendant's release because he possessed a controlled substance. *See* 18 U.S.C. §

6

3583(g)(1). The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted relief. *See* 18 U.S.C. § 3583(d); *United States v. Crace*, 207 F.3d 833, 835 (6th Cir. 2000) (holding district court "required by 18 U.S.C. § 3583(g) to revoke the defendant's term of supervised release upon the defendant's positive drug test and admission of the use of a controlled substance unless defendant could come under the exception in 18 U.S.C. § 3583(d)"). Defendant did not request or argue in favor of this exception and the record does not support its application.

The presence of Grade B violations also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

**IV.**

The Court has reviewed the entire record, including the Report, its addenda and accompanying documents, Defendant's underlying judgment and sentencing materials, and the letters filed at Docket Entry 45. Additionally, the Court has considered all of the § 3553 factors imported into the § 3583(e) analysis.

The Court first considers the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2001) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Defendant pled guilty to a conspiracy to distribute a mixture or substance containing methamphetamine and received a necessary, lengthy sentence to address his criminal behavior.

The Court next considers Defendant's history and characteristics, the need to deter criminal conduct, and the need to protect the public. While Defendant's criminal history is limited in

7

comparison to other defendants the Court encounters, the current violations are closely tethered to his underlying conviction. Defendant's repeated methamphetamine use creates a significant risk of recidivism. A term of imprisonment is necessary to protect the public and deter future criminal conduct.

The Court also considers the need to provide Defendant with training and treatment. Defendant clearly needs treatment to address his addiction. However, the nature of the violations, including his dishonesty regarding the first reported use followed by seemingly uncontrollable abuse after completing RDAP, do not warrant further investment of public resources. Rather, the undersigned will recommend that an additional condition be imposed, requiring Defendant to complete inpatient treatment at his own expense.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). The breach of trust in this case is particularly egregious. The undersigned cannot recall a prior supervised release revocation involving six positive drug screens for methamphetamine. Instead of being honest about his initial use and seeking the aid of the USPO, Defendant attempted to deceive his probation officer. He then proceeded to abandon all pretense and repeatedly used methamphetamine, even just before his initial appearance in this District. The letters of support filed in the record signify significant

8

mitigating factors, but the repeated trust breaches require a significant prison term. Hopefully, this sentence will accomplish the change intended by the original sentence.

The requirement that the Court seek to avoid unwarranted sentencing disparities among defendants with similar records who are found guilty of similar conduct is addressed by a recommended sentence within the Guidelines range. Here, the Court recommends a sentence of incarceration of six months. For the reasons discussed above, the Court finds this penalty is sufficient but not greater than necessary to meet the section 3553(a) factors incorporated into this analysis. *See* 18 U.S.C. § 3583(e).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's conviction does not carry a maximum term of supervised release due to the nature of the underlying offense. *See* 18 U.S.C. § 3583(h); 21 U.S.C. § 841(b)(1)(C). The Court recommends imposition of a three-year term of supervised release.

## V.

Based on Defendant's admitted conduct, and in consideration of the factors discussed above, the Court **RECOMMENDS**:

1. That Defendant be found guilty of the violations;

2. Revocation with a term of six months of imprisonment; and

3. A term of supervised release of three years, with the following additional special condition:

    a. Immediately upon release from incarceration, you must enter an inpatient substance abuse treatment program as directed by the USPO. You must comply

with all rules of the facility and successfully complete the program. You must pay for the cost of treatment services.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen** days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on District Judge Van Tatenhove's docket upon submission.

This the 10th day of January, 2023.

Signed By:
Hanly A. Ingram
United States Magistrate Judge